IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANTHONY BALDUCCI, | CASE NO. 1:22-CV-00299-JRK |
| Petitioner, | JUDGE JAMES R. KNEPP, II |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| KEITH FOLEY, WARDEN, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Representing himself, Petitioner Anthony Balducci filed a petition for a writ of habeas corpus. (ECF #1). The District Court has jurisdiction over the petition under 28 U.S.C. § 2254(a). On March 2, 2022, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of March 2, 2022). Respondent Keith Foley, as Warden of the Grafton Correctional Institution (hereinafter, the State), filed the Return of Writ (including the state court record) on June 30, 2022. (ECF #8). Mr. Balducci filed a Traverse to Return of Writ on August 22, 2022. (ECF #9).

For the reasons below, I recommend the District Court **DISMISS** the petition. I further recommend the District Court **DENY** a certificate of appealability for all grounds for relief.

PROCEDURAL HISTORY

A.      **Factual findings of the Court of Appeals**

The Ohio Court of Appeals, Eighth Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Balducci rebuts this

1

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District

determined:

{¶2} Balducci was indicted on February 12, 2019, for offenses dated January 27, 2019. The indictment alleged four counts: (1) aggravated murder under R.C. 2903.01(A) (Count 1), an unclassified felony; (2) murder under R.C. 2903.02(B) (Count 2), an unclassified felony; (3) felonious assault under R.C. 2903.11(A)(1) (Count 3), a second-degree felony; and (4) having weapons while under disability under R.C. 2923.13(A)(2) (Count 4), a third-degree felony. All four counts included one- and three-year firearm specifications, but Count 4 was later amended to delete the specifications.

{¶3} The state described video footage that formed the underlying facts of the charges at the original sentencing hearing at which Balducci moved to withdraw his guilty plea. The state reported that Balducci drove a Chevy Impala to pay a cell phone bill in person at the cell phone store on January 27, 2019. Video footage from the cell phone store shows him leaving the store at 1:39 p.m. Shortly thereafter, both Balducci and the victim appear in security footage at a dollar store. The victim left the store and was captured on neighborhood security footage entering a pedestrian footbridge at 1:53 p.m. The last video showing the victim alive on the footbridge was at 1:54 p.m.

{¶4} There is also video of Balducci driving the Impala to a street near the same footbridge. The video shows that he parked his car and exited the vehicle at 1:46 p.m., then walked towards the footbridge. He is then off camera for ten minutes and 22 seconds, after which he reappears, returning from the direction of the footbridge, and walks towards the vehicle at 1:57 p.m. No other individuals appear on the video footage in the vicinity of the footbridge during the same timeframe.

{¶5} Two teenagers found the victim on the footbridge around 4:00 p.m. the same day and reported their finding to the police. The victim suffered three gunshot wounds, two to the face and one to his heart. The state represented that the clothes Balducci wore in the video tested positive for gunshot residue a few days later.

A.     Plea Hearing

{¶6} The trial court held a pretrial on October 24, 2019. Trial was set for October 28, 2019. On the morning of trial, Balducci accepted a plea deal shortly before voir dire was to begin. As part of the plea deal, the state amended Count 1 from aggravated murder under R.C. 2903.01(A) to murder under R.C. 2903.02(A). The one- and three-year firearms specifications remained on Count 1. Count 4, having weapons while under disability, had previously been amended to delete the firearms

2

specifications. The state dismissed Count 2 and Count 3. Balducci pled guilty to amended Counts 1 and 4.

{¶7} In lieu of trial, the court held a plea hearing pursuant to Crim.R. 11. After the state outlined the plea agreement, the trial court addressed Balducci personally. The trial court noted that Balducci had the opportunity to speak with his attorneys and family members before accepting the plea deal. Before beginning the questioning, the trial court informed Balducci that he was "welcome to stop and ask me, or of course you may ask your respective attorneys" if he had any questions. (Tr. 17.) Balducci stated that he understood. In response to the trial court's questioning, Balducci stated that he is 42 years old; that he had obtained a GED; that he was not under the influence of any drugs, alcohol, or medication; that he was satisfied with the work of his attorneys; and that he is a United States citizen.

{¶8} The trial court reminded Balducci that he could ask questions before the court proceeded to review the constitutional rights he would waive by pleading guilty. Balducci stated that he understood he would be waiving certain constitutional rights by pleading guilty, including the right to a trial by jury; the right to confront and cross-examine the state's witnesses; the right to call witnesses on his behalf; the right to a lawyer; and the right to testify or not testify. He also stated that he understood that the state would bear the burden of proof beyond a reasonable doubt at trial.

{¶9} The court then informed Balducci that the penalty for murder, Count 1, is 15 years to life and explained that with the firearm specifications, he could face a sentence of 18 years to life for Count 1, followed by parole supervision. Balducci stated he understood. The court then explained the potential maximum penalties associated with Count 4, having weapons while under disability. The court explained that Count 4 could include up to three years of postrelease control, although the court immediately clarified that he would instead be subject to parole due to the murder conviction. The trial court also stated that it could order consecutive sentences on the two counts to which he was pleading guilty and that the court would set a date for sentencing if he entered a guilty plea. Balducci stated that he understood.

{¶10} Next, the trial court set forth the counts to which Balducci was pleading guilty, including Count 1, murder with one- and three-year firearms specifications and Count 4, having weapons while under disability. Balducci pled guilty to each count. He stated it was his choice to plead guilty and that no one made any threats or promises in order to get him to plead guilty. The trial court found that Balducci understood his constitutional rights and that he knowingly, intelligently, and voluntarily waived those rights. The court accepted his guilty plea and went on to discuss logistics for the sentencing hearing.

3

{¶11} The court indicated that it would accept sentencing memorandums and that it would "wait to receive the information that I get from both the prosecutors as well as your lawyers" before imposing a sentence. Balducci's trial counsel initially requested an expedited presentencing investigation report, but later agreed to proceed to sentencing without a report. The court advised Balducci's counsel, "if you file a sentencing memorandum, have your client's letters from his family present and able for me to review" and scheduled sentencing for October 31, 2019, three days after the plea hearing.

### B.      Motion to Withdrawal [*sic*]

{¶12} At what started as a sentencing hearing, the court began by stating to defense counsel that it had reviewed the state's sentencing memorandum, a prior presentence investigation report, and "all of the information that was contained in the letter that was provided to the Court as it related to your client."

{¶13} The state then recounted the video footage of Balducci and the victim. The court then heard from the victim's father and the mother of the victim's child, who had just started kindergarten. The victim's mother was also present, but did not address the court. Balducci's attorneys spoke on his behalf and asked for concurrent sentences, stating that Balducci was "deeply sorry for what he did" and "has accepted responsibility."

{¶14} The trial court then addressed Balducci, stating "I am appreciative that you accepted responsibility." At that point, Balducci asked to speak. He stated:

> Thank you, Your Honor. My heart goes out to his family. I know [the victim's mother] very well, his mother, she lived with me for a year and a half. I supported her like I would my own mother.
>
> With that being said, I want to withdraw my plea of guilty. I don't feel that I should plead guilty to something I didn't do. I didn't discuss this with my lawyers first because I feel that their best interest is not my best interest. I would like to enter a plea of not guilty.
>
> * * *
>
> I made a rash decision, Your Honor, and I apologize.

{¶15} The trial court advised that he should take time to consider his decision to withdraw his plea and that it did not think the decision to withdraw was in his best interest. Balducci responded:

I understand, Your Honor and I have done that. We sat for hours the other day before they convinced me that pleading guilty was my only way out. They told me that if I go to trial I'm not going to win. And with that attitude, you're not going to win, and that's how I felt, like I had no other choice but to plead guilty.

* * *

There's things that I requested that the lawyers didn't do to try to help my case, and I feel that my best interest is not their best interest.

{¶16} The trial court again encouraged Balducci to think seriously about his decision, stating that his counsel was very experienced. He replied:

I understand, Your Honor, and I by no means am as educated as my lawyers. And so hindsight is 20/20, and after I went back and I was able to actually think about what happened, we could say buyer's remorse, but even at the time of sentencing when I did decide to plead guilty, oftentimes I didn't understand what you were saying. I had to ask my lawyer what do I do, and he said "guilty," so I would just repeat what he told me to say. I truly didn't understand what you were saying a lot of the times until I went back and actually thought about it.

{¶17} The trial court questioned Balducci's sincerity regarding his supposed lack of understanding given his responses and demeanor at the plea hearing, but set a hearing date for his motion to withdrawal his guilty plea.

### C.      Hearing on Motion to Withdraw Plea

{¶18} A hearing for the motion to withdraw was set for November 6, 2019. The parties appeared in court that day, including Balducci's original counsel and new counsel. Balducci's original counsel withdrew from representing him. The trial court granted a continuance to allow his new counsel more time to review the case. During the proceeding, Balducci agreed with the trial court that he spent "quite a lot of time" speaking with his family and attorneys before entering his guilty plea. He also confirmed that he watched the state's video evidence before pleading guilty.

{¶19} The trial court held a hearing on Balducci's motion to withdraw his plea on November 14, 2019. The trial court began the hearing by stating that it had reviewed the jail logs and transport logs indicating when trial counsel met with Balducci. The courted noted that Balducci's counsel went to the jail seven times and that Balducci was transferred to the court five times to meet with his attorneys, excluding the dates he came to the court to plea and be sentenced, for a total of at least 12 visits. The

court also stated that it reviewed the timeframe of the case, and noted the court's multiple interactions with Balducci, and his interactions with his previous lawyers. The trial court further noted that Balducci had pled guilty in prior cases and was not "new to the system."

{¶20} The court also noted its familiarity with Balducci's original counsel and their many years of experience. The court observed that his counsel "spent a significant amount of time with [Balducci]" and "were thoroughly engaged in talking to him." The trial court acknowledged Balducci's concern that his original counsel did not have his best interests in mind based on their assessment of the likely outcome of proceeding to trial. It explained that "good lawyers are not there to tell you just what you want to hear" and still "fight" for their clients regardless of their assessment of the likely outcome.

{¶21} The trial court stated that it also reviewed the transcripts from the case up to that point. The trial court noted the absence of any evidence of mental health challenges or cognitive impairment and observed that Balducci appeared "very engaged" and "very attune[d]" during court proceedings. The trial court also stated that it believed Balducci "was accepting responsibility, truthfully, for the crime in question." It did not observe any indication that Balducci was confused or concerned during the plea hearing.

{¶22} The trial court also noted several circumstances that led it to question the sincerity of Balducci's desire to withdraw his guilty plea. In particular, it noted that Balducci stated "hindsight is 20/20" as one reason for requesting a withdrawal. The court further noted that the timing of Balducci's request was "suspect to the Court" in that he waited until just before sentencing was to proceed before addressing the victim's family members and then finally requesting to withdraw his plea.

{¶23} The trial court also gave Balducci's new counsel a chance to speak on his behalf regarding his motion to withdraw his guilty plea. Counsel argued that original counsel's 12 visits with Balducci prior to his guilty plea were "very little." Counsel further argued that original counsel failed to investigate a so-called "Facebook confession," and instead relied on the results of the state's investigation, which apparently removed the Facebook poster as a suspect before Balducci was identified as a suspect. They argued that trial counsel should have retained an independent investigator to investigate the possible confession.

{¶24} Finding that Balducci had merely changed his mind when faced with sentencing, the trial court denied his motion to withdraw his plea. The trial court then sentenced Balducci to life with the possibility of parole after 15 years on Count 1, murder, and three years on the three-year firearm specification associated with Count 1. The court ordered the three-year term be served before the 15-year term so that the full sentence for Count 1 was life with the possibility of parole after 18 years.

The trial court sentenced Balducci to three years on Count 4, having a weapon while under disability, to be served concurrently with the 15-year sentence for murder, but consecutively with the three-year sentence for the firearm specification. The total sentence is life with the possibility of parole at 18 years.

(ECF #8-1 at PageID 157-65 (citations omitted); *see also State v. Balducci*, No. 109262, 2020 WL 6796973 (Ohio Ct. App. Nov. 19, 2020)).

B.    **Trial court proceedings**

On February 12, 2019, a Cuyahoga County grand jury indicted Mr. Balducci as follows:

- Count One: Aggravated murder, in violation of Ohio Revised Code § 2903.01(A);

- Count Two: Murder, in violation of Revised Code § 2903.02(B);

- Count Three: Felonious assault, in violation of Revised Code § 2903.11(A)(1); and

- Count Four: Having weapons under disability, in violation of Revised Code § 2923.13(A)(2).

(ECF #8-1 at PageID 68-69). Each offense also included one- and three-year firearms specifications under Revised Code §§ 2941.141(A) and 2941.145(A). (*Id.*). Mr. Balducci was arraigned on February 15, 2019, pled not guilty to all charges, was declared indigent, and was appointed counsel. (*Id.* at PageID 71).

On October 24, 2019, Mr. Balducci signed a written waiver of his right to jury trial as to Count Four only. (*Id.* at PageID 84). The trial court accepted the waiver and dismissed the one- and three-year gun specifications as to Count Four. (*Id.* at PageID 86).

On October 28, 2019, instead of proceeding with trial, the parties entered into a plea agreement. The State amended Count One from aggravated murder to murder with one- and three-year firearm specifications and deleted both firearm specifications in Count Four. (*Id.* at

7

PageID 88; *see also* ECF #8-2 at PageID 303-04). Mr. Balducci pled guilty to amended Counts One and Four, and the trial court dismissed Counts Two and Three at the State's request. (ECF #8-1 at PageID 88). The trial court conducted a colloquy with Mr. Balducci that included a discussion of his constitutional rights and an assessment of his competency, after which it accepted his guilty plea to the amended charges and scheduled sentencing for October 31, 2019. (*Id.*; ECF #8-2 at PageID 313-16).

On the morning scheduled for sentencing, following the State's presentation, a victim impact statement, and remarks from defense counsel, Mr. Balducci told the trial court he wanted to withdraw his guilty plea. (ECF #8-2 at PageID 340). He stated: "I don't feel that I should plead guilty to something I didn't do. I didn't discuss this with my lawyers first because I feel that their best interest is not my best interest. I would like to enter a plea of not guilty." (*Id.*). He subsequently stated he had made a "rash decision" and apologized to the court. (*Id.*). In response to questions from the court about the change of plea hearing, Mr. Balducci also remarked: "I truly didn't understand what you were saying a lot of the times until I went back and actually thought about it." (*Id.* at PageID 344). The trial court responded that Mr. Balducci was being "a bit disingenuous right now, because I thought you were very smart and very engaged with me." (*Id.*). Nevertheless, the trial court adjourned the sentencing hearing and directed preparation of the transcript from the change of plea hearing. (*Id.*).

On November 5 and 14, the State submitted written briefs opposing Mr. Balducci's request to withdraw his guilty plea. (ECF #8-1 at PageID 90-103).

The trial court convened a hearing on November 6, 2019. (ECF #8-2 at PageID 346). During that hearing, Mr. Balducci's attorneys indicated they were withdrawing because "of a

8

conflict with our client in light of the proceedings last week"; they also reported Mr. Balducci had acquired new counsel. (*Id.* at PageID 347). The trial court granted new counsel's motion requesting a delay in the hearing on the request to withdraw the prior guilty plea. (*Id.* at PageID 347-48).

On November 14, 2019, the trial court proceeded with a hearing on the motion to withdraw Mr. Balducci's guilty plea. (ECF #8-1 at PageID 105; ECF #8-2 at PageID 353). The trial court noted that after Mr. Balducci commented he had not had sufficient contact with prior defense counsel before the change of plea, it reviewed the records from the Cuyahoga County Sheriff's Department regarding transport of Mr. Balducci to the courthouse for meetings with counsel and in-court hearings. (ECF #8-2 at PageID 359). The trial court noted there were two visits with one defense attorney and five with the other defense attorney, plus "five subsequent multiple-hour visits in this courtroom with the defendant, because he had to review substantial portions of videotape . . . ." (*Id.*). The court also noted another five dates for trial preparation visits. (*Id.* at PageID 360). The trial court also noted it reviewed the proposed plea with Mr. Balducci "with the constitutional context of the questions and the answers and what I stated as it related to punishment." (*Id.* at PageID 361).

The trial court went on to comment it had reviewed transcripts of the prior proceedings, during which it "noticed that [Mr. Balducci] indicated several times things that might appear disingenuous in his response." (*Id.* at PageID 365). It then observed that "in the throes of the moment of the plea and the sentencing hearing, he said a few things that would lead the Court to have suspicion about his ultimate motivation here." (*Id.* at PageID 366).

9

The trial court also received argument from Mr. Balducci's new defense counsel. (*Id.* at PageID 376-92). It also gave Mr. Balducci the opportunity to speak for himself. Among other things he said:

> THE DEFENDANT: You stated several things while you were speaking that I feel are false.
>
> THE COURT: Okay. Like what?
>
> THE DEFENDANT: You indicated that I apologized to the family. I said, my heart goes out to Jo Marie, which I'm sure yours does as well. Anytime someone loses a loved one it's sad. I lost my father and I'm sure her heart goes out to me. That doesn't mean that she killed my father; that just means that she has sympathy for me, which I have heard—
>
> THE COURT: I apologize. Let me get the transcript so I can look at that. But, I was under the impression then that when you said, my heart goes out to the family, that was an apology, that you were admitting that the death of their loved one was in fact something that was very concerning to you.
>
> THE DEFENDANT: It was very tragic. Anytime you lose a loved one. If you were to lose a child, you know, you would—people would say the same, my heart goes out to you. That doesn't mean they did it.
> Second, the timing on my withdrawal of the plea was the only time that I got to speak during the trial. I didn't want to interrupt or be rude in any way, so I waited for my turn to speak, then withdraw my plea.
> My lawyers were well aware that I wanted to withdraw my plea. My mother contacted them, as well as Stephanie, who was the lady that lives in Utah. That's my son's mother.
>
> THE COURT: Okay.
>
> THE DEFENDANT: We met in the back for a brief session where they asked me if I wanted to withdraw my plea or not, and I didn't speak.
>
> THE COURT: You did not speak to them about that?
>
> THE DEFENDANT: Absolutely not, because at this point, I felt their interest was not my interest. When I pleaded guilty, they led me to believe that there was over a 95 percent chance if we go to trial I'm going to lose and get the rest of my life in prison, and that I need to take 18 years because there is a chance I can get out. That is my only option, is what they told me, and that's what I believed.

10

> THE COURT: So if I tell you right now theoretically that that's probably some solid information that they're giving to you as officers of the Court, and they're representing to you what they believe has occurred, especially as of late in this courthouse—so I, myself, have just had an aggravated murder case with death specifications. The defendant was advised of the same things, and he is now on death row. A few months before that, another aggravated murder.
>
> So these are not cases that I am unfamiliar with. And I'm not unfamiliar with the outcome of most of these cases. If I thought that you were receiving a patently unfair plea, I might even say, what is proceeding here.
>
> So to suggest that their perspective is something that a good lawyer would not want to at least inform you of, and inform you strenuously—because life without parole is a lot different than parole eligibility after 18, correct?
>
> THE DEFENDANT: I would imagine.
>
> THE COURT: Right. I mean, that's a correct statement. It would be better to get that choice of 18 to life versus life without the possibility of parole. I mean, you're a young man. You can serve your sentence, theoretically, and be out, and have a life.
>
> THE DEFENDANT: Thank you, your Honor.
>
> THE COURT: Do you want to add anything else to your hearing, Mr. Balducci?
>
> THE DEFENDANT: No, your Honor.

(*Id.* at PageID 393-97). Following additional remarks from the prosecutor and defense counsel, the

trial court denied Mr. Balducci's request to withdraw his plea and proceeded with sentencing.

(ECF #8-1 at PageID 105; ECF #8-2 at PageID 406). The trial court sentenced Mr. Balducci as

follows:

> THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF LIFE.
>
> THE DEFENDANT IS SENTENCED TO 3 YEARS ON THE 3 YEAR FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO THE BASE CHARGE OF MURDER, ON THE CHARGE OF MURDER THE COURT SENTENCES THE DEFENDANT TO LIFE WITH THE POSSIBILITY OF PAROLE AFTER THE 3 YEAR GUN SPECIFICATION AND THE 15 YEARS,

TOTAL 18 TO LIFE, PLUS 3 YEARS ON COUNT 4, COUNT 4 TO BE SERVED CONCURRENTLY TO THE MURDER BUT CONSECUTIVELY TO THE FIREARM SPECIFICATION, AGAIN FOR A TOTAL OF LIFE WITH PAROLE ELIGIBILITY AFTER 18 YEARS.

THE COURT NOTES THAT THE 1 YEAR FIREARM SPECIFICATION MERGES WITH THE 3 YEAR FIREARM SPECIFICATION IN COUNT 1.

(ECF #8-1 at PageID 107).

C.    **Direct appeal**

On December 3, 2019, through defense counsel, Mr. Balducci filed a Notice of Appeal with the Eighth District. (ECF #8-1 at PageID 120). He presented a single issue for review: "Did the trial court abuse its discretion in denying appellant's Motion to withdraw plea where the plea was made without the effective assistance of counsel and there was not a complete and impartial hearing with full and fair consideration?" (*Id.* at PageID 129).

On November 19, 2020, the Eighth District affirmed the trial court's judgment. (*Id.* at PageID 156-79; *see also Balducci*, 2020 WL 6796973). The Eighth District found that the "record is indeed thorough and lacks support for a substantive legal reason to allow [Mr.] Balducci to withdraw his plea." (ECF #8-1 at PageID 176). Furthermore, it held that Mr. Balducci's plea "was knowingly, intelligently, and voluntarily made;" that he "received a full, fair, and impartial hearing"; and that "[t]he trial court thoroughly explained that based on everything it observed at the various proceedings and in particular at the plea hearing, that [Mr.] Balducci's request seemed to be motivated by a mere change of heart." (*Id.* at PageID 178).

On August 18, 2021, proceeding *pro se*, Mr. Balducci filed a Notice of Appeal to the Supreme Court of Ohio, along with a Motion for Leave to File Delayed Appeal. (*Id.* at PageID 185-223). The Supreme Court of Ohio granted the delayed appeal (*id.* at PageID 225), and Mr.

Balducci filed his Memorandum in Support of Jurisdiction on November 1, 2021 (*id.* at PageID

227). In it, he asserted two propositions of law, as follows:

> Proposition of Law No. 1: Where a defendant in a criminal case moves to withdraw
> a plea of guilty prior to sentencing and at his first opportunity to do so and cites as
> his reason the inadequacy of counsel for failing to investigate and prepare for trial
> and his actual innocence, while citing to evidence supporting innocence, it is error,
> abuse of discretion and denial of procedural due process of law to refused to permit
> presenting withdrawal of the plea.

> Proposition of Law No. 2: Where trial counsel in a criminal case conducts no
> investigation without a reasonable decision to forego such investigations, and
> completely fails to prepare for trial, the defendant has been deprived of the effective
> assistance of counsel and a resultant guilty plea entered without effective counsel is
> invalid.

(*Id.* at PageID 228) (cleaned up). The State filed its Memorandum in Response to Jurisdiction on

December 1, 2021 (*id.* at PageID 243-57), and on January 18, 2022, the Supreme Court of Ohio

declined jurisdiction (*id.* at PageID 259; *see also State v. Balducci*, 179 N.E.3d 119 (Ohio 2022)

(table)).

**D.     Application to reopen appeal**

Meanwhile, on February 17, 2021, through counsel, Mr. Balducci filed in the Eighth

District his Application to Reopen Appeal Pursuant to Appellate Rule 26(B). (ECF #8-1 at PageID

265-73). In his application, Mr. Balducci argued his appellate attorneys did not provide effective

assistance because they did not argue on direct appeal that he received ineffective assistance of trial

counsel. (*Id.* at PageID 269). The State filed a Memorandum in Opposition on March 17, 2021.

(*Id.* at PageID 278-89). On June 30, 2021, the Eighth District declined Mr. Balducci's application.

(*Id.* at PageID 291-96). Mr. Balducci did not appeal that decision to the Supreme Court of Ohio.

## FEDERAL HABEAS PETITION

On February 22, 2022, representing himself, Mr. Balducci filed his habeas petition in this Court. (ECF #1). In it, he advanced three grounds for relief, as follows:

**Ground One**: Petitioner was deprived of procedural due process by the trial court denying the presentence motion to withdraw plea on the basis of ineffective counsel and innocence.

**Supporting Facts**: Petitioner's trial counsel failed to research, prepare and investigate for trial, instead convincing him to plead guilty despite his innocence. When presented with these facts, the trial court refused to permit presentence withdrawal of the plea.

**Ground Two**: Petitioner was deprived of the effective assistance of counsel on direct appeal.

**Supporting Facts**: Petitioner's direct appeal counsel failed to present an assignment of error addressing the deprivation of effective assistance of counsel at the trial court level proceedings where counsel induced a guilty plea rather than research, prepare and investigate for trial, and despite Petitioner's protestations of innocence. This procedurally defaulted the issue for federal review.

**Ground Three**: Petitioner was deprived of the effective assistance of counsel throughout the trial court, plea and sentencing proceedings.

**Supporting Facts**: Petitioner's trial counsel failed and/or refused to properly research, prepare or investigate for trial, instead focusing solely upon inducing a guilty plea with assurances that the trial could not be won, without making a reasoned decision not to investigate, and despite Petitioner's continuing protestations of innocence. Notably, it has been discovered that another individual has since confessed to the crime.

(ECF #1 at PageID 5, 7, 8; *see also* ECF #4 at PageID 22).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Balducci's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and

therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The state-court decision does not need to refer to relevant Supreme Court cases or even demonstrate awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

A state-court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir.

15

2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state-court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable given the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also

require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal

claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims barring federal court review. *Williams,* 460 F.3d at 806; *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022) ("When [a state prisoner] has failed to [first present that claim to

the state court in accordance with state procedures], and the state court would dismiss the claim on that basis, the claim is 'procedurally defaulted.'").

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Furthermore, neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Futility cannot constitute cause for the procedural default of a claim for failure to raise a claim on direct review if it means

20

simply that a claim was "unacceptable to that particular court at that particular time." *Engle*, 456 U.S. at 130, n.35.

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do

not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Moreover, merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas

22

petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

DISCUSSION

**A.     Ground One**

In Ground One, Mr. Balducci claims he was deprived of due process when the trial court denied his motion to withdraw the guilty plea that was based on ineffective assistance of counsel. (ECF #1 at PageID 5). First, he alleges the trial court did not conduct a proper hearing on his motion. (ECF #4 at PageID 31). He also alleged his counsel failed to investigate a third party's confession to the murder and failed to interview witnesses, issue subpoenas, or do any pretrial investigation into the facts and circumstances of the case. (*Id.* at PageID 29-30).

As to the confessor, Mr. Balducci was made aware through the discovery process that another person confessed to the murder on Facebook, but the state's investigator eliminated that individual as a suspect after interviewing that individual and the individual's father. (*Id.* at PageID 29). He argues his trial counsel's reliance on the state's investigation of the alleged confession and failure to do an independent investigation on the matter constitutes deficient performance. (*Id.*). As it relates to the failure to interview other witnesses, issue subpoenas, or do other pretrial investigation, Mr. Balducci has not identified other facts that should have been unearthed or who specifically should have been interviewed, nor demonstrated how these unidentified facts and testimonies would have impacted his decision to plead guilty.

Beginning with the denial of Mr. Balducci's motion to withdraw his guilty plea, whether the trial court erred in deciding such a motion is primarily a question of state law and is therefore not a cognizable ground for habeas relief. *Alt v. Eppinger*, No. 1:14 CV 00100, 2015 WL 3489867,

23

at *7 (N.D. Ohio Jun. 2, 2015). Additionally, whether the trial court's hearing on the motion to withdraw the guilty plea was, as Mr. Balducci claims, neither "full and fair" nor "complete and impartial" is also an issue of state law that is not cognizable on federal habeas review because there is no federal constitutional right to a hearing on a motion to withdraw a guilty plea. *See Nicholson v. Larose*, No. 1:13CV2535, 2015 WL 1757898, at *3 (N.D. Ohio Apr. 17, 2015) (collecting cases).

It is well-settled that "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67 (internal quotations omitted). A federal habeas court may not reexamine state-court determinations based solely in state law. *Bradshaw*, 546 U.S. at 76. Rather, a state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Id.* Thus, federal courts may not issue a writ of habeas corpus on the basis of a perceived error of state law but are limited only to deciding whether a petitioner's conviction violated the Constitution, laws, or treaties of the United States. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also* 28 U.S.C. § 2254(a).

A claimed error of state law may nevertheless serve as a basis for federal habeas relief if the ruling was so fundamentally unfair so as to violate due process. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *see also Xie v. Edwards*, 35 F.3d 567 (6th Cir. 1994) (table) (holding that "the district court properly found that whether the trial court abused its discretion in denying Xie's motion to withdraw his plea is a question governed by Ohio's statutes and cases" and, therefore, "cannot support federal habeas relief absent a showing that the alleged error rendered the proceedings fundamentally unfair"); *see also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and

24

decency." *Dowling v. United States*, 493 U.S. 342, 353 (1990) (cleaned up). Courts, therefore, "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (quotation omitted).

Mr. Balducci states the trial court's denial of his motion to withdraw the guilty plea violated fundamental fairness by violating procedural due process. (ECF #1 at PageID 5). In support, he claims the trial court did not give him an opportunity to fully explain why he wanted to withdraw his guilty plea. (ECF #4 at PageID 31). A review of the state-court record shows Mr. Balducci fully articulated to the trial court his reasons for wanting to withdraw the plea. At the sentencing hearing, he expressed that he wanted to withdraw his guilty plea because it was a rash decision and after he entered the plea, he determined he should not plead guilty to something he did not do. (ECF #8-2 at PageID 340). He claimed he felt he had no other choice than to plead guilty because his lawyers convinced him he would not succeed at trial. (*Id.*). He stated his attorneys did not do certain things he requested but he did not elaborate specific deficiencies. (*Id.* at PageID 341-42). Mr. Balducci also stated that, regardless of what he said at the plea hearing, he did not understand what the judge was saying and simply repeated what his attorneys told him to say. (*Id.* at PageID 344). Mr. Balducci was represented by new counsel at the hearing, who argued Mr. Balducci's former attorneys were ineffective in their representation leading up to the guilty plea, specifically by meeting with him only twelve times in nine months, not filing any motions, and not independently investigating another person's confession to the murder. (*Id.* at PageID 378). Mr. Balducci stated his attorneys led him to believe he would lose at trial and receive a life sentence without parole, so a plea was the only option. (*Id.* at PageID 3959).

The Eighth District determined the hearing was "both full and fair and complete and impartial," stating as follows:

{¶49} A full evidentiary hearing is not required in all cases. "The scope of a hearing on a motion to withdraw should reflect the substantive merits of the motion." "'[B]old assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit.'" ("The scope of a hearing on a motion to withdraw a guilty plea is dependent upon the facial validity of the motion itself.").

{¶50} "Therefore, where a defendant fails to make a prima facie showing of merit, the trial court need not 'devote considerable time to' his or her request to withdraw." "Further, the scope of the hearing is within the sound discretion of the trial court, subject to this court's review for an abuse of discretion." "'This approach strikes a fair balance between fairness for an accused and preservation of judicial resources.'"

{¶51} When moving to withdraw his plea, Balducci stated that he made a rash decision, that "hindsight is 20/20" and that after he "was able to actually think about what happened, we could say buyer's remorse, but even at the time of sentencing when I did decide to plead guilty, oftentimes I didn't understand what you were saying." The record contradicts Balducci's assertion that he did not understand what the trial court was saying at the plea hearing. He stated throughout that proceeding that he understood what was happening and did not raise any issues or ask any questions even though the trial court invited him to do so.

{¶52} Rather than hold a hearing the same day as Balducci made his motion, the trial court set a separate hearing date and granted his new counsel a continuance to become more familiar with the record before the hearing. At the motion to withdraw hearing, the trial court recalled its thorough Crim.R. 11 colloquy at the plea hearing and detailed the proceedings when Balducci moved to withdrawal. There is no indication in the record that the trial court did not provide a complete and impartial withdraw hearing and full and fair consideration of Balducci's request to withdrawal his plea.

{¶53} The trial court interacted with the state and Balducci's counsel at the hearing and set forth several reasons, based in the record, for denying the motion. The trial court reviewed the transcripts from the case, the jail logs, and transport logs. It also reviewed the parties' briefs on Balducci's motion to withdraw. The trial court explained that Balducci's motion to withdraw seemed disingenuous given that he only spoke up at the end of the sentencing hearing after addressing the victim's mother.

{¶54} Balducci argues that his original counsel knew he wanted to withdraw because members of his family called his counsel to tell them so, but the trial court observed that his counsel seemed utterly surprised by his motion to withdraw. Further, Balducci admitted that he did not discuss his withdrawal request with his lawyers first.

{¶55} Balducci also argues that the hearing was not impartial because the trial court "lectured" Balducci during the first portion of the hearing and because the court expressed "suspicion" about Balducci's motivation for changing his plea based on his statement that "hindsight is 20/20." Balducci's new counsel expressed these concerns of partiality to the trial court at the withdrawal hearing and the trial court expressly refuted them:

> COUNSEL: It sounds like there has already been a decision made.
>
> THE COURT: Absolutely not. I'm happy to hear from your client, hear his additional concerns. This Court is only making the most thorough record that I possibly can of the record of the information.

{¶56} The record is indeed thorough and lacks support for a substantive legal reason to allow Balducci to withdraw his plea. The fact that the trial court found Balducci's assertions unpersuasive or suspicious does not mean it failed to adequately and impartially consider his request. As the trial court itself explained, expressing doubt "doesn't mean that I'm predisposing my perspective, however, after listening to what your client has to say." The trial court provided reasons why it was suspicious of Balducci's motives, including making the motion right after he addressed the victim's family and right before sentencing, that his original counsel appeared surprised, and that he stated "hindsight is 20/20." After a careful review of the record, we find no substantive reason to second-guess the trial court's observations and conclusions.

(ECF #8-1 at PageID 174-77; *see also Balducci,* 2020 WL 6796973, at *8-9).

Because the record conclusively demonstrates that the trial court's hearing on the motion to withdraw the guilty plea was not fundamentally unfair Mr. Balducci cannot prevail on this claim.

Mr. Balducci next contends his trial attorneys were ineffective and not competent in representing him prior to his guilty plea because they did not properly investigate his case and coerced him into pleading guilty as his "only way out." (ECF #4 at PageID 29).

To succeed on his habeas claim, Mr. Balducci must first establish his guilty plea was not entered voluntarily and intelligently. In *Tollett v. Henderson,* 411 U.S. 258, 267 (1973), the Supreme Court reaffirmed the principle recognized in *Brady v. United States,* 397 U.S. 742 (1970), *McMann v. Richardson,* 397 U.S. 759 (1970), and *Parker v. North Carolina,* 397 U.S. 790 (1970):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*

Consequently, a knowing and voluntary guilty plea waives all non-jurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See United States v. Stiger,* 20 F.App'x 307, 308-09 (6th Cir. 2001).

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama,* 395 U.S. 238, 242 (1969). A voluntary and intelligent plea is one in which the defendant is aware of the "relevant circumstances and likely consequences" of his plea. *Boykin,* 395 U.S. at 242; *Brady,* 397 U.S. at 748; *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004). The voluntariness of the plea "can be determined only by considering all the relevant circumstances surrounding it." *Brady,* 397 U.S. at 749. Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann,* 397 U.S. at 771.

28

The state generally satisfies its burden of showing that the plea was intelligent and voluntary by producing a transcript of the state-court proceedings. *McAdoo*, 365 F.3d at 494. A state court finding that a guilty plea is made voluntarily is afforded a presumption of correctness. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The petitioner must overcome a heavy burden to overturn a state court's findings. *Id.* at 327. "Solemn declarations in open court" made by a defendant during a plea hearing "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Mr. Balducci must not only demonstrate that his guilty plea was not entered into voluntarily and intelligently, he must also establish his attorneys' advice to enter that plea was constitutionally deficient. The Supreme Court has determined the two-part test for evaluating claims of ineffective assistance of counsel announced in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to a guilty plea based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Accordingly, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S at 687-88, and to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. A voluntarily and intelligently entered guilty plea will not be vacated simply because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, or by a showing that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings. *Tollett*, 411 U.S. at 267.

In *Hill*, the Supreme Court stated:

[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.

474 U.S. at 59.

Mr. Balducci does not establish either his guilty plea was involuntary or that his attorneys' performance was constitutionally deficient. The Eighth District reviewed the plea hearing and the hearing on Mr. Balducci's motion to withdraw his plea and determined he entered his guilty plea voluntarily. (*See* ECF #8-1 at PageID 166-68, *see also Balducci*, 2020 WL 6796973, at *5-6). A presumption of correctness applies to that finding. *Garcia*, 991 F.2d at 326. The Eighth District acknowledged Mr. Balducci's argument that his trial counsel did not adequately investigate the case but concluded the record provided "no substantive support for his claim of innocence or available defenses." (ECF #8-1 at PageID 168; *see also Balducci*, 2020 WL 6796973, at *6). Having reviewed the record, I find that the Eighth District's analysis of the claim is based on a reasonable determination of the facts in light of the evidence introduced in the state courts and is a reasonable interpretation of precedent set forth in *Strickland* and *Hill*. 28 U.S.C. § 2254(d). Mr. Balducci has not shown otherwise and has not rebutted the presumption of correctness applied to the state-court's factual findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Mr. Balducci has also not sufficiently alleged or shown the requisite deficient performance under *Strickland* or prejudice under *Hill*, *i.e.*, that investigation of the third-party confessor or discovery of the unidentified evidence he seeks would have led Mr. Balducci's counsel to change the recommendation to plead guilty or that had his counsel not failed to investigate the case, Mr.

Balducci would have rejected the plea and gone to trial. Mr. Balducci offers no record support for his implicit contention that further unspecified investigations would be favorable to him. Indeed, without some record support that further investigation would result in favorable testimony or evidence, it is impossible to show that trial counsel was professionally unreasonable in that respect or that it made any difference in the result. *See United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Discussed in more detail below, it is not likely that independent investigation would result in a different outcome.

To the extent Mr. Balducci asserts solely a state-law claim that the trial court abused its discretion in denying his motion to withdraw his guilty plea, I recommend the District Court **DISMISS** that claim as not cognizable. In all other respects, Because Mr. Balducci has not shown that the trial court violated his due process rights or that alleged deficiencies in counsel's investigation of the case prejudiced him, I recommend the District Court **DENY** the claim as meritless.

## B.     Ground Two

In Ground Two, Mr. Balducci claims his appellate counsel was ineffective for failing to raise independent claims of ineffective assistance of trial counsel on direct appeal. (ECF #1 at PageID 7). Mr. Balducci first raised this claim in his application to reopen the direct appeal before the Eighth District. (ECF #8-1 at PageID 269). But he did not appeal that decision to the Supreme Court of Ohio, rendering this claim procedurally defaulted and thus unreviewable. *See Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)) (an issue is procedurally defaulted when

the petitioner fails to raise that issue in state court and pursue it through the state's "ordinary appellate review procedures).

Because this claim is procedurally defaulted, this Court may not review it unless Mr. Balducci can demonstrate (1) cause and prejudice or (2) failing to consider the claims will result in a fundamental miscarriage of justice because he is actually innocent. *Coleman,* 501 U.S. at 750. The cause standard in procedural default cases requires the petitioner to show that "some objective factor external to the defense impended counsel's efforts" to raise the claim in state court. *Murray,* 477 U.S. at 488. According to Mr. Balducci, appellate counsel filed an application for reopening under Rule 26(B) but did not inform him of the Eighth District's June 2021 decision denying it, thus depriving him of the opportunity to seek discretionary review in the Supreme Court of Ohio. (ECF #4 at PageID 33).

Ineffective assistance of counsel may constitute cause for a procedural default only where petitioner has a Sixth Amendment right to counsel. *Coleman,* 501 U.S. at 752; *see also Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 433 (6th Cir. 2006). The right to counsel extends to the first appeal of right but not to discretionary appeals or post-conviction collateral proceedings. *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). An application for reopening a direct appeal under Rule 26(B) is a collateral proceeding rather than part of the direct right of appeal and thus, "there is no federal constitutional right to assistance of counsel at that stage." *Lopez v. Wilson,* 426 F.3d 339, 341 (6th Cir. 2005) (en banc). Because Mr. Balducci did not have a Sixth Amendment right to counsel for post-conviction collateral proceedings, including his Rule 26(B) application, his appellate counsel's failure to inform him of the state court's decision does not constitute cause sufficient to overcome procedural default. *See Carter v. Mitchell,* 693 F.3d 555 (6th Cir. 2012)

32

(counsel's failure to appeal the appellate court's denial of the petitioner's Rule 26(B) application was not cause to excuse procedural default because the petitioner had no right to counsel in collateral post-conviction proceedings).

Mr. Balducci contends he fits within a narrow exception to the rule that there is no constitutional right to an attorney in collateral post-conviction proceedings announced in *Martinez*, 566 U.S. 1. In *Martinez*, the Supreme Court considered whether a petitioner could show cause to excuse his procedural default in a post-conviction proceeding where that proceeding was the petitioner's first opportunity to allege ineffective assistance of trial counsel. *Id.* at 5. Because Arizona prohibited criminal defendants from raising ineffective-assistance-of-trial-counsel arguments on direct appeal, Arizona's post-conviction proceeding "is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 11. As a result, the Court found it "necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as a cause to excuse a procedural default," and announced a narrow exception: inadequate assistance of counsel at such initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. *Id.* at 9.

To fit within the *Martinez* exception, the petitioner must show that: (1) he has a "substantial" claim of ineffective assistance of trial counsel; (2) he has "no counsel or counsel . . . was ineffective" in his collateral-review proceeding; (3) the collateral-review proceeding was the "initial" review of the claim; and (4) state law requires ineffective-assistance-of-trial-counsel claims to be raised in the first instance in a collateral-review proceeding. *Id.* The Supreme Court explicitly stated the narrow exception "does not concern attorney errors in other kinds of

33

proceedings, including appeals from initial-review collateral proceedings, second or successive

collateral proceedings, or petitions for discretionary review in a State's appellate courts." *Id.* at 16.

Mr. Balducci does not meet the first requirement. *Martinez*'s reach extends only to initial-

review collateral proceedings for claims of ineffective assistance of *trial counsel*, not appellate

counsel. *See Davila v. Davis*, 582 U.S. 521, 530 (2017) (petitioners asserting ineffective-assistance-of-

appellate-counsel claims do not meet the narrow exception in *Martinez,* where the Court's

principal concern was for claims of ineffective assistance of trial counsel). Mr. Balducci's claim for

ineffective assistance of appellate counsel thus cannot qualify under *Martinez. See Hodges v. Colson,*

727 F.3d 517, 531 (6th Cir. 2013), *cert. denied,* 575 U.S. 915 (2015) (quoting *Martinez,* 566 U.S. at

15) ("[w]e will assume that the Supreme Court meant exactly what it wrote: '*Coleman* held that an

attorney's negligence in a postconviction proceeding does not establish cause, and this remains

true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at*

*trial*.'").

Mr. Balducci could also avoid his procedural default of Ground Two by showing a

fundamental miscarriage of justice occurred "where a constitutional violation has probably resulted

in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. In *Schlup v. Delo*, 513

U.S. 298 (1995), the Supreme Court held that a petitioner who asserts a credible claim of actual

innocence can "avoid a procedural bar to the consideration of the merits of his constitutional

claims." *Id.* at 327. Actual innocence means "factual innocence, not mere legal insufficiency."

*Bousley,* 523 U.S. at 623. A valid actual-innocence claim must be supported by new reliable

evidence that was not presented at trial and is so strong a court cannot have confidence in the

outcome. *Schlup,* 513 U.S. at 324-25. In other words, a "petitioner must show that it is more likely

than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Mr. Balducci asserts that the third-party's confession satisfies his claim of actual innocence. (ECF #9 at PageID 421-22). Attached to the Traverse is a supplemental police report summarizing the interview of that confessor and his father. (ECF #9-1 at PageID 425). Aside from the Eighth District's determination that this part of the investigation removed the confessor as a suspect, the report itself does not establish, or even suggest, that the third-party was in the vicinity at the time of the murder. Rather, the report establishes that the third-party claimed to be at home all day and his father verified that information. (*Id.*). This is not evidence establishing Mr. Balducci's innocence. As such, Mr. Balducci does not meet the actual-innocence exception to overcoming the procedural default of Ground Two.

I therefore recommend the District Court **DISMISS** Ground Two as procedurally defaulted because Mr. Balducci failed to raise the issue before the Supreme Court of Ohio and does not establish either cause and prejudice for the default or that he is actually innocent of the murder.

## C.     Ground Three

In Ground Three, Mr. Balducci attempts to raise a standalone claim of ineffective assistance of trial counsel for failing to research, investigate, or prepare for trial rather than focusing on inducing his guilty plea. (ECF #1 at PageID 8). Ground Three duplicates the claim Mr. Balducci raised in Ground One, where he claimed ineffective assistance of counsel in the context of a guilty plea and requires no further discussion here.

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Balducci has not made a substantial showing that he was denied any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Balducci a COA as to all three grounds of his petition.

36

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend the District Court **DENY** the first and third grounds for relief as meritless, **DISMISS** the second ground for relief as procedurally defaulted and **DENY** the petition. I also recommend the District Court **DENY** a certificate of appealability as to all grounds for relief.

Dated: November 6, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).